**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| CARMEN BROWN-MARSHALL,<br><br>        Plaintiff,<br><br>  v.<br><br>ROCHE DIAGNOSTICS CORP.,<br>MICHAEL DeFEO,<br>        Defendants. | Civil No. 10-CV-5984<br><br>(RMB-JS)<br><br><br>**OPINION** |

David Zatuchni
Zatuchni & Associates, LLC
287 South Main Street
Lambertville, NJ 08530

    Attorneys for Plaintiff

Susan L. Nardone
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

Kenneth Yerkes
Barnes & Thornburg LLP
11 South Meridian St.
Indianapolis, IN 46204

    Attorneys for Defendants

**BUMB**, United States District Judge:

    Plaintiff Carmen Brown-Marshall ("Plaintiff") asserts claims under the New Jersey Law Against Discrimination ("LAD") for racial discrimination, age discrimination, and retaliation

1

against Defendants Roche Diagnostic Corp. ("Roche") and Michael DeFeo ("DeFeo") (collectively, the "Defendants"). Defendants have moved for summary judgment. For the reasons that follow, Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part.

I. Background[1]

    A. Plaintiff's Employment History And Bankruptcy Filing

Plaintiff was hired by Roche on January 8, 2006 to serve as an Account Manager in the Philadelphia region. In that position, Plaintiff was charged with managing Roche's existing clients in the region and developing new business. A year and a half after Plaintiff was hired, on June 27, 2007, Defendant DeFeo became the Regional Business Manager for the Philadelphia region and Plaintiff's supervisor.

The next year, in 2008, Roche underwent a reorganization and Plaintiff was assigned to the newly created position of "Account Executive." In that position, Plaintiff's duties differed in that she was now primarily responsible for generating new business, as opposed to managing existing relationships.

---

[1] Defendants argued that Plaintiff failed to set forth admissible evidence in opposition to their motion because Plaintiff's certifications accompanying her opposition failed to comply with 28 U.S.C. § 1746. This Court disagrees. Plaintiff's certifications each "certif[ied] that the foregoing statements are true" and that the affiants understood that if they "made any statements that are knowingly false," they would be "subject to punishment." Such statements are sufficient to satisfy 28 U.S.C. § 1746. Scott v. Calpin, No. 08-4810, 2012 WL 3019955, at *1 n.1 (D.N.J. July 24, 2012).

In March 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission asserting that she had been discriminated against based on her age and nationality. In April 2009, the EEOC concluded that Plaintiff had failed to establish a prima facie case of discrimination.

On May 16, 2009, Plaintiff filed for bankruptcy with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). On July 10, 2009, her bankruptcy plan was confirmed.

Plaintiff was placed on a performance improvement plan (the "PIP") on August 10, 2010 by DeFeo. The PIP required Plaintiff to, among other things, improve her communication with co-workers and colleagues. The PIP was instituted following issues with two clients and a potential client. The first issue revolved around Plaintiff's conduct with respect to a prospective client, Clara Maass Medical Center. Plaintiff's team believed Clara Maass was scheduled to do a site visit to Holy Spirit Hospital. Clara Maass instead visited Englewood Hospital. It was important to Roche that Clara Maass visit Holy Spirit Hospital, and not Englewood Hospital, because Holy Spirit had, and Englewood lacked, certain equipment that Roche wished to demonstrate to Clara Maass. However: (1) on April 20, 2010, Plaintiff scheduled a site visit for Clara Maass to visit Englewood Hospital on April 30, 2010; (2) on April 23, 2010,

3

Plaintiff told team members that she had scheduled Clara Maass to visit Holy Spirit Hospital on April 30, 2010; (3) on April 29, 2010, Plaintiff informed her team that the visit to Holy Spirit, scheduled for the next day, had been cancelled; and (4) on April 30, 2010, Clara Maass visited Englewood Hospital. When queried by Area Director Thomas Fernandes ("Fernandes") as to when she first learned that Clara Maass would be visiting Englewood, Plaintiff indicated that she had only learned that Clara Maass intended to visit Englewood, and not Holy Spirit, as of April 29, 2010. She also indicated that she merely accompanied Clara Maass on the visit because it would have otherwise conducted the site visit on its own, and that the details of the visit were only finalized on the 29th. Plaintiff did not explain that she had previously scheduled the Englewood visit. Plaintiff does not dispute that she did not clear the Englewood visit in advance with her own team, or even mention it to them. She had, however, contacted two other Roche officials to approve the visit, in advance of the visit – one of whom it appears Plaintiff erroneously believed was the Account Executive for Englewood. Plaintiff now claims that she only scheduled the Englewood site as a back-up because of her awareness that Clara Maass was reluctant to drive the greater distance to Holy Spirit. Plaintiff submits that she first became aware of Clara

4

Maass' reluctance to visit Holy Spirit several weeks prior to the scheduled visit.

As to the second issue, Plaintiff had several communications problems revolving around her account with Accurate Diagnostics ("Accurate"). Plaintiff first failed to inform DeFeo that Accurate had reconsidered its prior decision to move forward with a Roche competitor. Accurate subsequently contacted Fernandes and complained of Plaintiff's conduct with it during contract negotiations. Specifically, Plaintiff had provided it with a draft proposal that had not been approved by Roche during the negotiations. Accurate informed Fernandes that it wanted Plaintiff removed from any further contract negotiations. And Fernandes instructed Plaintiff that DeFeo, not Plaintiff, would handle all negotiations with Accurate going forward.

Third, Plaintiff visited another Account Executive's client, CLM, without obtaining his prior approval.

On August 13, 2010, just three days after the performance improvement plan was implemented, Accurate wrote Plaintiff directly, instructing her not to contact it concerning the still pending contract negotiations. Despite this instruction, on August 17, 2010, Plaintiff e-mailed Accurate asking it how it wanted to proceed on the proposed deal. Accurate than forwarded the August 13, 2010 e-mail to DeFeo informing him that, contrary

to its instruction, Plaintiff had contacted it yet again concerning the contract negotiations earlier that day. Plaintiff then wrote another e-mail to Accurate on August 19, 2010 concerning the deal. Accurate again forwarded that e-mail to DeFeo and Fernandes.

After receiving that e-mail, Fernandes contacted human resources and the Vice President of Sales, Chad Brown ("Brown"), recommending that Plaintiff be terminated for her failure to follow instructions in communicating with Accurate and failure to follow the performance improvement plan. Brown agreed that, based on the circumstances described to him, Plaintiff should be terminated, but wanted to meet with her before finalizing the decision. On August 25, 2010, Brown met with Plaintiff, discussed the matter with her, and asked her to address it. Plaintiff offered no defense of her conduct. On August 26, 2010, Plaintiff was terminated. While Defendants assert that DeFeo was not a decision-maker in the decision to terminate Plaintiff, a handwritten note by DeFeo (Plaintiff's Exhibit QQQ) would support a reasonable inference that DeFeo was, in fact, a decision-maker in this process. And, because this Court must afford Plaintiff, the non-moving party, all reasonable inferences, it affords Plaintiff that inference here. Following Plaintiff's termination, Plaintiff was replaced by a 49 year old white woman.

Plaintiff failed to report any claim based on her termination to the Bankruptcy Court.

B.  **Discriminatory Comments By DeFeo**

Plaintiff has put forth evidence that DeFeo has made a number of discriminatory comments in 2007 and 2008.[2] DeFeo made comments that:

(1) he did not like working with account executives that were "long in the tooth";

(2) he preferred to work with younger employees;

(3) his hiring practices would make the sales team look like "a cheerleading team";

(4) he couldn't work with anybody over 40 years old and not a good looking woman; and

(5) that management was going to think his hiring technique was to create a "harem" in the Philadelphia region.

C.  **This Action**

On October 13, 2010, Plaintiff filed suit claiming that her termination was in violation of LAD because it was motivated by age (52) and race (African American) and was in retaliation for, among other things, earlier complaints she had made of discriminatory treatment by DeFeo. Plaintiff claims that Defendants' proffered justification for her termination is pretextual. Plaintiff also claims DeFeo is liable as an aider and

---

[2] DeFeo denies making these comments. However, because this Court must adopt the nonmoving party's version of the facts where facts are in dispute in assessing a summary judgment motion, it credits Plaintiff's version of the events. See Meyer v. Riegel Prods. Corp., 720 F.3d 303, 307 n.2 (3d Cir.1983).

7

abettor of Roche's conduct. Plaintiff's Complaint demands punitive damages.

II. Standard

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic Valley Sewerage Comm'rs, 406 F. App'x 664, 667 (3d Cir. 2011) (quotation and citation omitted).

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In the face of such evidence, summary judgment is still appropriate "[w]here the record . . . could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions

thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(internal quotations and citations omitted). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal citations and quotations omitted).

III. Analysis

Defendants move for dismissal of Plaintiff's claims on four grounds. First, Defendants argue that Plaintiff is barred from asserting these claims based on judicial estoppel.[3] Second, Defendants argue that all of Plaintiff's claims fail as a matter of law. Third, Defendants argue that the claims against DeFeo individually must be dismissed because, all of the alleged

---

[3] Defendants also previously raised a standing argument. That argument has since been mooted.

9

wrongful conduct was his own, and he cannot be said to have aided and abetted his own conduct. Fourth, Defendants argue that Plaintiff's claim for punitive damages must be dismissed.

A.  Defendants' Estoppel Argument

Defendants argue that Plaintiff is judicially estopped from asserting these claims because Plaintiff was required, and failed, to report these claims after her bankruptcy. This Court disagrees.

While a failure to disclose a claim to a bankruptcy court may form a basis to judicially estop a subsequent civil suit based on that claim, judicial estoppel is unwarranted here because the law is unsettled as to whether Plaintiff's claims, which accrued post-confirmation when she was terminated, were subject to mandatory disclosure. Florence v. Axis Surplus Ins. Co., No. 11-2020, 2012 WL 6726692, at *2-3 (W.D. La. Dec. 27, 2012); Byrd v. Wyeth, Inc., 907 F. Supp. 2d 803, 805 (S.D. Miss. 2012); Gilbreath v. Averitt Exp., Inc., No. 09-1922, 2010 WL 4554090, at *9-10 (W.D. La. Nov. 3, 2010); Woodward v. Taco Bueno Rests., Inc., No. 05-CV-804, 2006 WL 3542693, at *4-12 (N.D. Tex. Dec. 8, 2006). Accordingly, Defendants' motion for summary judgment on this basis is DENIED.

B.  Defendants' Argument That Plaintiff's Claims Fail As A Matter Of Law

This Court first addresses Plaintiff's race and age discrimination claims. It then addresses Plaintiff's retaliation claim.

    1.   Race And Age Discrimination Claims

LAD claims for race and age discrimination both require that a Plaintiff first establish a prima facie claim. Hood v. Pfizer, Inc., 322 F. App'x 124, 127 (3d Cir. 2009)(holding the above with respect to racial discrimination under LAD); Kremp v. Wachovia Bank, N.A., 451 F. App'x 151, 155-56 (3d Cir. 2011)(holding the same with respect to age discrimination under LAD). To make out a prima facie case of discrimination, a plaintiff must put forth evidence that: (1) the plaintiff is a member of a protected class; (2) is qualified for the position; (3) was fired from the position; and (4) under circumstances that give rise to an inference of unlawful discrimination. Taylor v. Amcor Flexibles, Inc., 507 F. App'x 231, 233 (3d Cir. 2012)(race); D'Alessandro v. City of Newark, 08-1886, 2010 WL 4929246, at *7 (D.N.J. Nov. 29, 2010)(age). With respect to the second prong, all that is necessary to make out a prima facie case is evidence that the plaintiff "was actually performing the job prior to the termination." Hayes v. Furniture Brands Inter., No. 06-1688, 2008 WL 3821777, at *3 (D.N.J. Aug. 12, 2008). With respect to the fourth prong, that prong may be established: (1) in the wrongful discharge based on race

context, by evidence that the position was filled by a person outside of the protected class; and (2) in the wrongful discharge based on age context, by evidence that the position was filled by a person sufficiently younger to support an inference of discrimination. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996)(race). Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009)(age).

Once a Plaintiff makes out a prima facie claim, the burden shifts to the defendant to advance a legitimate basis for its actions. Hood, 322 F. App'x at 127, Kremp, 451 F. App'x at 155-56. Where a defendant advances a legitimate justification, the burden shifts again to the plaintiff to demonstrate that the advanced rationale was pre-textual. Id. To do so, the Plaintiff must "point to some evidence upon which a factfinder could reasonably either disbelieve [the defendant's] articulated motive or believe that" an improper motive was more likely than not the motivating cause for the defendant's action. Id. (holding the above with respect to age discrimination claims). A plaintiff attempting to discredit the employer's proffered reason "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Instead, the

plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (quotation and citation omitted). "[S]tray [inappropriate] remarks" by non-decision makers, or by decision-makers unrelated to the decision making process, carry little weight, particularly if such remarks were made at a temporally remote time from the date of the decision at issue. Kremp, 451 F. App'x at 156.

Here, Defendants do not dispute that Plaintiff is a member of two protected classes – based on her age and race. Nor do they dispute that Defendants suffered an adverse employment action when she was terminated. Defendants instead argue that Plaintiff's race and age claims fail based on three other grounds. First, they argue that Plaintiff failed to show the second element of a prima facie claim - that she was qualified for the position. But there is no dispute that Plaintiff was actually performing her job duties prior to her termination. Therefore, Plaintiff has satisfied this element. Second, Defendants argue that Plaintiff has failed to show the fourth element – facts supporting an inference of discrimination. But there is no dispute that Plaintiff was replaced by a white

13

employee, who was four years younger.  Because Plaintiff's replacement was outside of the protected class, and because Plaintiff's replacement was sufficiently younger to support an inference of discrimination, Plaintiff has satisfied this element for both her race and age claims.  Bergen Commercial Bank v. Sisler, 157 N.J. 188, 218 (N.J. 1999)(citing to example where five years was sufficient); Von Rudenborg v. Di Giorgio Corp., No. 08-5791, 2011 WL 4594220, at *5 (D.N.J. Sep. 30, 2011)(finding three years sufficient); Sempier v. Johnson & Higgins, 45 F.3d 724, 729-30 (3d Cir. 1995)(finding replacement by four year younger and ten year younger workers was, together, sufficient).

Third, Defendants argue that they have presented a legitimate basis for her termination – Plaintiff's performance issues – and Plaintiff has failed to offer evidence that that reason was pre-textual.  This Court disagrees.  With respect to Plaintiff's age discrimination claim, DeFeo made repeated remarks that would support a finding that his actions throughout were motivated by age discrimination.[4]  And, while Defendants

---

[4] While Defendants argue that DeFeo's remarks should all be considered stray remarks, this Court disagrees for four reasons.  First, as discussed above, DeFeo can be considered a decision-maker for purposes of this motion.  And, even if he was not a decision-maker for purposes of Plaintiff's termination, he was a decision-maker for the PIP, which was an integral part of her termination.  Second, his remarks relate to the employment decision at issue, since they were about the replacement of older workers.  Third, given that DeFeo purportedly repeated ageist remarks several times, they cannot fairly be regarded as "stray."

14

adduced evidence that Roche would have made the same decision irrespective of DeFeo, at this stage, DeFeo's actions cannot be neatly separated from the ultimate decision to terminate, given that: (1) the decision to terminate Plaintiff was largely based on Plaintiff's placement on a performance improvement plan by DeFeo; and (2) DeFeo was a decision-maker in the decision to terminate. See Staub v. Proctor Hosp., 131 S.Ct. 1186, 1194 (2011)(holding that, where supervisor performs act motivated by animus that is intended to cause an adverse employment action, and act is proximate cause of ultimate employment action, employer may be liable); Lowe v. Medco Health Solutions of Willingboro, LLC, No. 10-4823, 2012 WL 2344844, at *4 (D.N.J. June 19, 2012)(applying Staub in LAD context). With respect to Plaintiff's race discrimination claim, because a jury could believe that age was the Defendants' motive, it naturally follows that it could also disbelieve the proffered justification.

Accordingly, Defendants' motion for summary judgment on the race and age discrimination claims is DENIED.

2. Retaliation Claim

In order to make out a prima facie case of retaliation under LAD, a plaintiff must show that it: (1) engaged in a protected activity; (2) suffered an adverse action; and (3) a

---

Fourth, the remarks are not so temporally remote that they can be easily dismissed.

causal connection exists between the protected activity and adverse action. Holland v. Simon Prop. Group, Inc., 495 F. App'x 270, 272 (3d Cir. 2012). With respect to the causal connection prong, a close temporal connection between the protected activity and the adverse action may be sufficient to establish this prong. Watkins v. Nabisco Biscuit Co., 224 F. Supp. 2d 852, 872-73 (D.N.J. 2002). But a gap of as little as three months between the protected activity and the adverse action, without more, is insufficient. Hussein v. UPMC Mercy Hosp., 466 F. App'x 108, 112 n.4 (3d Cir. 2012). Once a prima facie case is made, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the adverse action. Id. at 112. If the defendant meets that burden, the plaintiff then bears the burden of providing that the defendant's reason was merely pre-textual, as described above. Id.

Here, Defendants dispute: (1) Plaintiff's ability to demonstrate a casual connection between her termination and a protected activity; and (2) Plaintiff's ability to rebut Defendants' proffered justification for Plaintiff's termination. Because this Court agrees that Plaintiff has failed to show a causal connection between protected activity and her termination, it does not address Defendants' second ground for dismissal. With respect to the causal connection requirement,

Plaintiff has simply submitted no evidence of a casual connection, as required.[5] Accordingly, Plaintiff's retaliation claim is DISMISSED.

C. Aiding And Abetting Claim

Defendants argue that DeFeo cannot be liable based on an aider and abetter theory, since, by Plaintiff's account, DeFeo was the principal wrongdoer. While a number of courts within this District have agreed with Defendants' argument[6], those courts did not have the benefit of the Appellate Division's recent decision in Rowan v. Hartford Plaza Ltd., No. L-3106-09, 2013 WL 1350095, at *8 (N.J. Super. Ct. App. Div. Apr. 5, 2013). Under that decision, supervisors, like DeFeo, <u>can</u> be held liable for aiding and abetting his employer's wrongful conduct, even where the only bad conduct at issue is the supervisor's own conduct. Id. at *8; see also Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001)("Under the LAD a supervisory employee may be liable for discrimination for aiding and abetting another's (the

---

[5] While Plaintiff has not attempted to rely on temporal proximity, even if Plaintiff had, her claim would still fail. Any adverse actions were too temporally remote to establish close temporal proximity, given that Plaintiff's PIP and termination were both in August 2010, over a year and a half after the EEOC investigation concluded in April 2009. Hussein, 466 F. App'x at 112 n.4 (holding that three month gap was too large).

[6] Seibert v. Quest Diagnostic, Inc., No. 11-304, 2012 WL 1044308, at *8 (D.N.J. Mar. 28, 2012); Putterman v. Weight Watchers Intern., Inc., No. 10-1687, 2010 WL 3310706, at *2 (D.N.J. Aug. 19, 2010: Tsakonas v. Nextel Comms., Inc., No. 04-1363, 2006 WL 2527998, at *6 (D.N.J. Aug. 31, 2006); Newsome v. Admin. Office of the Courts, 103 F. Supp. 2d 807, 823 (D.N.J. 2000).

employer's) violation."); Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir. 1999)(holding that when supervisor engaged in "affirmatively harassing acts," he "flouts [his] duty" and "subjects himself and his employer to liability"); Coulson v. Town of Kearny, No. 07-5893, 2010 WL 331347, at *5 (D.N.J. Jan. 19, 2010); Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 462 (D.N.J. 2009); Danna v. Truevance Mgmt., Inc., No. 05-5395, 2007 WL 2156361, at *3 (D.N.J. July 25, 2007). While it is admittedly an "awkward theory" to hold an individual liable for aiding and abetting his own conduct, it would thwart LAD's broad and remedial purpose[7], and make little sense, to construe it as permitting "individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct." Rowan, 2013 WL 1350095, at *8. Accordingly, Defendants' motion for summary judgment on this basis is DENIED.

    D.   Punitive Damages

Defendants have also moved for dismissal of Plaintiff's claim to entitlement to punitive damages.

In the employment discrimination context, punitive damage awards must meet two requirements. First, the "wrongdoer's conduct [must be] especially egregious." Lehman v. Toys 'R' Us,

---

[7]    Matthews v. N.J. Inst. of Tech., 772 F. Supp. 2d 647, 656 n.20 (D.N.J. 2011)(recognizing broad and remedial purpose of LAD).

Inc., 624 A.2d 445, 464 (1993)(citation and quotation omitted). Second, employers should only be liable "in the event of actual participation of upper management or willful indifference." Id. Each of these issues is a difficult and fact-sensitive determination and, under New Jersey law, the exceptional nature of a given case and the wanton or malicious nature of the defendant's conduct are questions for the finder of fact. Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1135 (D.N.J. 1990).

Because the issue of punitive damages is a fact-sensitive question for a jury, ruling on this issue at the summary judgment stage would be premature. Lowe, 2012 WL 2344844, at *7 (reaching same conclusion); Incorvati v. Best Buy Co., Inc., No. 10-1939, 2013 WL 3283956, at *11 (D.N.J. June 27, 2013)(same). Accordingly, this Court DENIES Defendants' motion for summary judgment on this issue, without prejudice.

IV. Conclusion

For all these reasons, Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part, as described above.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated:   July 19, 2013